IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**District Judge R. Brooke Jackson**

Civil Action No. 19-cv-00635-RBJ

MARK A. ESQUIBEL,

    Applicant,

v.

SIOBAHN BURTLOW, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.
_____

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**
_____

    Applicant, Mark A. Esquibel, has filed, *pro se*, a second amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 8) challenging the validity of his criminal conviction in the District Court of Arapahoe County, Colorado. Having considered the Respondents' Answer (Doc. No. 29) and the state court record, the Court will deny the second amended Application.[1]

**I. Factual and Procedural Background**

    In July 2010, Mr. Esquibel was convicted by a jury of aggravated motor vehicle theft, criminal mischief, and reckless driving. (Doc. No. 15-1 at 22; No. 15-2 at 2). He was adjudicated a habitual offender and sentenced to an aggregate prison term of 24 years. (Doc. No. 15-1 at 20; Doc. No. 15-2 at 2). The Colorado Court of Appeals

---

[1] Mr. Esquibel did not file a Reply to the Respondents' Answer, but was afforded an opportunity to do so. (*See* Doc. No. 32).

affirmed Mr. Esquibel's convictions in *People v. Mark Anthony Esquibel,* No. 11CA0411 (Colo. App. Jan. 10, 2013) (unpublished) (Doc. No. 15-2). Mr. Esquibel's petition for certiorari review was denied by the Colorado Supreme Court on September 16, 2013. (Doc. No. 15-4).

Mr. Esquibel filed a motion for post-conviction relief pursuant to Colo. Crim. P. Rule 35(c) on February 12, 2014. (Doc. No. 15-1 at 18). The motion was denied on January 1, 2018, following an evidentiary hearing. (Doc. No. 15-1 at 17). The Colorado Court of Appeals affirmed the district court's order in *People v. Mark Anthony Esquibel*, No. 17CA0380 (Colo. App. Dec. 20, 2018) (unpublished). (Doc. No. 15-3). Mr. Esquibel did not seek certiorari review in the Colorado Supreme Court.

Mr. Esquibel initiated this § 2254 proceeding on March 4, 2019. He filed a second amended application on April 10, 2019, asserting the following claims for relief:

> (1) The trial court violated Mr. Esquibel's Fourth Amendment rights when the court failed to order the suppression of a key found near him at the time of his arrest. (ECF No. 8 at 7).
>
> (2) Post-conviction counsel was constitutionally ineffective in connection with the post-conviction evidentiary hearing. (*Id.* at 11).
>
> (3) Mr. Esquibel's 24-year sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. (*Id.* at 15).
>
> (4) Mr. Esquibel was denied a fair trial when the trial court allowed the admission of the following highly prejudicial and irrelevant evidence: (a) a police officer's testimony about his encounter with Mr. Esquibel, which omitted the information that the encounter resulted in an arrest which was later deemed illegal; (b) testimony from Mr. Esquibel's former employer that Mr. Esquibel stopped working for him when he "went to jail"; and, (c) testimony about a recorded jailhouse conversation in which Mr. Esquibel suggested manufacturing an alibi. (*Id.* at 16-18).

In a Pre-Answer Response, Respondents conceded that this action is timely under 28 U.S.C. § 2244(d)(1) and that Mr. Esquibel exhausted available state court remedies for claims 3 and 4(c). (Doc. No. 15 at 4, 14). Respondents argued, however, that claim 2 failed to state a basis for federal habeas corpus relief, *see id.* at 3, and that claims 1, 4(a) and 4(b) were procedurally defaulted, *id.* at 11, 13-14.

In an August 14, 2019 Order to Dismiss in Part, the Court dismissed claims 1, 2, 4(a) and 4(b) and directed Respondents to answer the merits of claims 3 and 4(c). (Doc. No. 26).

The Court addresses claims 3 and 4(c) below.

**II. Applicable Legal Standards**

    **A. 28 U.S.C. § 2254**

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The applicant bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the court must answer under § 2254(d)(1) is whether

3

the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time of the relevant state court decision. *See Greene v. Fisher*, 565 U.S. 34 (2011). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision. *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1). *See id*. at 1018.

If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or (b) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent. *Maynard* [*v. Boone*], 468 F.3d [665], 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably

4

> extends, or unreasonably refuses to extend, a legal principle from
> Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires
> considering the rule's specificity. The more general the rule, the more
> leeway courts have in reaching outcomes in case-by-case determinations.
> [I]t is not an unreasonable application of clearly established Federal law
> for a state court to decline to apply a specific legal rule that has not been
> squarely established by [the Supreme] Court.

*Harrington*, 562 U.S. at 101 (internal quotation marks omitted). In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision and then ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

5

*Harrington*, 562 U.S. at 88 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 562 U.S. at 102.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.

Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the applicant bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller- El v. Cockrell*, 537 U.S. 322, 340 (2003)).

**B. *Pro Se* Litigant**

Mr. Esquibel is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* status does not entitle an applicant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**III. Analysis of Claims**

**A. Claim 3**

Mr. Esquibel claims that his 24-year habitual offender sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. (Doc. No. 8 at 15).

**1. Applicable Supreme Court law**

The Eighth Amendment "contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (quoting *Harmelin*

*v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J. concurring in part and concurring in the judgment)). A sentence violates the Eighth Amendment if it is "'grossly disproportionate' to the crime." *Ewing*, 538 U.S. at 23 (quoting Justice Kennedy's concurrence in *Harmelin*, 501 U.S. at 1001); *see also Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) ("[O]ne governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years.").

The Eighth Amendment does not preclude a state legislature from inflicting increased punishment on recidivists to deter repeat offenders and to separate them from society for an extended period of time. *Ewing,* 538 U.S. at 25-27; *see also Rummel v. Estelle,* 445 U.S. 263, 285 (1980) ("[T]he point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction."). Thus, a court's proportionality review of a habitual offender sentence must take into account the state legislature's legitimate goals in sentencing repeat offenders. *See Ewing,* 538 U.S. at 29. State legislatures are afforded broad discretion to fashion a sentence that fits within the scope of the proportionality principle. *Lockyer,* 538 U.S. at 76; *Harmelin,* 501 U.S. at 999 (Kennedy, J., concurring in part and concurring in the judgment).

Successful Eighth Amendment gross proportionality challenges to non-capital sentences are "exceedingly rare." *Harmelin*, 501 U.S. at 963 (quoting *Rummel*, 445 U.S. at 272). *See also Lockyer*, 538 U.S. at 77 ("The gross disproportionality principle

reserves a constitutional violation for only the extraordinary case."). The Supreme Court has only twice invalidated a sentence under the Eighth Amendment. *See Weems v. United States*, 217 U.S. 349 (1910) (defendant sentenced to fifteen years in chains and hard labor for falsifying a public document); *Solem v. Helm,* 463 U.S. 277, 297 (1983) (defendant sentenced to life imprisonment without parole after committing six nonviolent felonies including writing a bad $100-dollar check).

**2. State court proceedings**

On direct appeal, the Colorado Court of Appeals rejected Mr. Esquibel's claim based on the following reasoning:

> In conducting proportionality reviews, courts first compare the gravity of the offense to the severity of the punishment. If this comparison yields no inference of gross disproportionality, the inquiry ends. *People v. McNally*, 143 P.3d 1062, 1063-64 (Colo. App. 2005). Here, the threshold comparison yields no such inference.
>
> Because defendant was sentenced as a habitual criminal, we consider the gravity and seriousness of his triggering offense and his prior offenses in combination. *People v. Gaskins*, 825 P.2d 30, 36 (Colo. 1992). Two of defendant's prior convictions -- second degree burglary and possession of a controlled substance -- are per se grave and serious. *See People v. Reese*, 155 P.3d 477, 479-80 (Colo. App. 2006); *People v. Cisneros*, 855 P.2d 822, 830 (Colo. 1993).
>
> Although no Colorado case has held that defendant's triggering offense -- aggravated motor vehicle theft -- is per se grave and serious, such an offense "may not be characterized as lacking in gravity." *People v. Penrod*, 892 P.2d 383, 387 (Colo. App. 1994); *see People v. Cooper*, 205 P.3d 475, 481 (Colo. App. 2008) ("[a]utomobile theft is a significant offense"). We agree with the trial court's conclusion that this offense was grave and serious under the circumstances presented. *People v. McCulloch*, 198 P.3d 1264, 1269 (Colo. App. 2008) ("The circumstances of this particular

offense, however, coupled with defendant's criminal background, were aggravated."). As explained by the court, "driving a vehicle in an unsafe manner with fencing dragging behind it . . . [in] the middle of the night can certainly . . . threatened harm to other citizens who were on the street." *See People v. Deroulet*, 48 P.3d 520, 524 (Colo. 2002) (to determine if a crime is grave or serious, we consider the "harm caused or threatened to the victim or to society and the culpability of the offender").

But even if the triggering offense was not grave and serious, "it is not necessary for each offense to be grave and serious for a court to conclude that the offenses taken together are grave and serious." *People v. Strock*, 252 P.3d 1148, 1158 (Colo. App. 2010). When considered in combination, defendant's offenses indicate "a persistent disrespect and disregard for the rule of law and social norms." *People v. Gallegos*, 226 P.3d 1112, 1119 (Colo. App. 2009). And they are not "so lacking in gravity or seriousness" as to suggest that defendant's sentence was grossly disproportionate. *Deroulet*, 48 P.3d at 524-25 (internal quotation omitted).

Further, defendant's sentence to twenty-four years in prison is "decidedly less severe than a life sentence or an indeterminate sentence because (1) it is for a definite period that will conclude under its own terms, and (2) it is subject to a parole scheme that may result in early release." *McNally*, 143 P.3d at 1064 (for a triggering offense of theft, plus prior offenses that included burglary and attempted burglary, a twenty-four-year sentence yields no inference of gross disproportionality).

(Doc. No. 15-2 at 8-10).

### 3. AEDPA analysis

The Colorado Court of Appeals concluded that Mr. Esquibel's 24-year habitual offender sentence was not grossly disproportionate to his crimes. In so concluding, the state appellate court considered the gravity and seriousness of Mr. Esquibel's triggering offense and his prior offenses—factors that are relevant to the gross proportionality determination under Supreme Court case law. *See Ewing,* 538 U.S. 22; *Harmelin,* 501

10

U.S. at 1002-1004 (Kenney, J., concurring in part and concurring in the judgment); *Solem,* 463 U.S. at 291. The Colorado Court of Appeals' determination that the offenses of second-degree burglary and possession of a controlled substance are grave and serious crimes under Colorado law is not subject to challenge in this federal habeas proceeding. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Further, the Colorado Court of Appeals' finding that Applicant's triggering offense—aggravated motor vehicle theft—"may not be characterized as lacking in gravity" is supported by the following factual findings of the trial court in conducting an abbreviated proportionality review of Mr. Esquibel's sentence:

> And the defendant was placed on parole sometime around September of 2009. In November 20 of 2009 committed the offense that's before the Court. That is the motor vehicle theft. And certainly the facts of that case are important to the Court as well . . . [because of] harm caused[.] [T]he defendant was bound and determined to steal that vehicle from the police officer's yard, former police officer's yard, and did everything he could to steal it, including wrecking property, dragging the fence down the road created such a ruckus that lay witnesses observed what was going on and went to see what was happening. Then he ditched the vehicle and left the scene. Certainly not the type of crime where we are talking about aggravated robbery or something like that but definitely driving a vehicle in an unsafe manner with fencing dragging behind it and notwithstanding was the middle of the night can certainly be threatened harm to other citizens who were on the street.

(State Court Record ("R."), 1/12/11 Hrg. Tr. at 11-12). Mr. Esquibel does not point to any clear and convincing evidence to contradict the state courts' factual findings.

Because Mr. Esquibel was adjudicated a habitual offender, the 24-year sentence

imposed by the state trial court was mandated by Colorado statute.  *See* COLO.REV.STAT. (C.R.S.) §§ 18-1.3-801, 18-1.3-401 (2019).  (*See also* R., 1/11/11 Hrg. Tr. at 83).  This Court is reluctant to interfere with the Colorado Legislature's determination of the appropriate sentencing range.  Moreover, Mr. Esquibel's sentence provided an opportunity for parole, which is pertinent to the Eighth Amendment inquiry.[2] *See Rummel*, 445 U.S. at 280-81 (finding it significant that the defendant had the possibility of parole, which distinguished the defendant from someone serving a life sentence without parole).

In reviewing the Colorado Court of Appeals' determination, the Court is mindful that Supreme Court decisions on proportionality "lack clear objective standards to distinguish between sentences for different terms of years." *Harmelin*, 501 U.S. at 1001. Because the contours of the gross-disproportionality principle are imprecise, the state courts are afforded more "leeway" in applying the general rule in reaching outcomes in case-by-case determinations.  *See Harrington*, 562 U.S. at 101; *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004).  Based upon Supreme Court benchmarks, the Court cannot find that Mr. Esquibel's sentence is one of the rare "extraordinary" cases where the sentence is grossly disproportionate to the crimes for which it was imposed. *See Lockyer*, 538 U.S. at 73-77 (concluding that the California Court of Appeals did not unreasonably apply Supreme Court law in affirming habeas petitioner's sentence of two consecutive terms of 25 years to life in prison for stealing videotapes worth

---

2  Mr. Esquibel was paroled during the pendency of this action. (*See* Doc. No. 30).

approximately $150 from two K-Mart stores); *Ewing,* 538 U.S. at 28-30 (upholding 25-year to life sentence imposed under a recidivist statute for felony grand theft—stealing three golf clubs worth approximately $1,200); *Rummel*, 445 U.S. at 284-85 (concluding that a life sentence with the possibility of parole was not disproportionate for a three-time non-violent recidivist who had successive convictions of fraudulent use of a credit card to obtain $80 worth of goods or services, passing a forged check in the amount of $28.36, and obtaining $120.75 by false pretenses).   *See also Jackson v. Ray,* No. 08-6099, 292 F.App'x 737, 743 (10th Cir. Aug. 27, 2008) (unpublished) (concluding, under § 2254(d)(1), that concurrent 30-year sentences imposed for convictions on charges of possession with intent to distribute marijuana and possession with intent to distribute cocaine "do not present an extraordinary case" as required by *Lockyer*).

The Court finds and concludes that the Colorado Court of Appeals' determination that Mr. Esquibel's sentence was not grossly disproportionate to his offense was consistent with Supreme Court law.

Mr. Esquibel is not entitled to federal habeas relief for claim 3.

**B. Claim 4(c)**

Mr. Esquibel claims that he was denied a fair trial when the trial court admitted highly prejudicial and irrelevant evidence of a recorded jailhouse telephone conversation in which Mr. Esquibel suggested manufacturing an alibi.   (Doc. No. 8 at 18).

**1. Applicable Supreme Court law**

"Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Spears v. Mullin*, 343 F.3d 1215, 1225 (10th Cir. 2003). See also *Estelle,* 502 U.S. at 67-68. "In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (citing *Darden v. Wainwright*, 477 U.S. 168, 179-183 (1986)). "Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner. . . . " *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citing *Donnelly v. DeChristophoro*, 416 U.S. 637, 643 (1974)). "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002).

**2. State court proceedings**

At trial, an employee at the Arapahoe County jail testified that Mr. Esquibel (while in jail for the charged offenses), stated the following to a woman on the telephone:

> Defendant: Is there any way that I can, you can, that I can, because . . . when they arrested me, I told [them] I got dropped off by . . . my girlfriend, so they, so I, if I can come up with an alibi . . . .
>
> Female voice: Uh-huh.
>
> Defendant: You understand?
>
> Female voice:  Uh-huh.

Defendant: So is there any way that we can figure that out? Understand what I'm saying?

Female voice: Uh-huh.

Defendant: Because I told them that . . . we were coming from a club downtown, and it's already on, like, a police report that the police, um, wrote.

Female voice: Uh-huh.

Defendant: It says that I was coming from a club downtown and that my girlfriend dropped me off. . . we were going to drop my cousin off, but me and my girlfriend got into an argument, . . . so I told her, . . . "I'll walk, too."

So I got out of the car with my cousin. My cousin went into the apartment where he lives and I just started walking. And the police rolled up on me. You know what I mean?

Female voice: Uh-huh.

Defendant: So?

Female voice: Okay.

Defendant: What do you think?

Female voice: Sounds good, Babe.

Defendant: Huh?

Female voice: I don't know who could be an alibi, Babe? Catrina?

Defendant: Yeah. She'll do it for me? Well, I mean for you?

Female voice: I don't know. I'll have to ask her.

(R., 7/19/10 Trial Tr. at 288-90; 7/20/10 Trial Tr. at 21-23).

15

On direct appeal, the Colorado Court of Appeals concluded that Mr. Esquibel's post-crime jailhouse phone conversation was properly admitted at trial. (ECF No. 15-2 at 4). The state appellate court reasoned:

> Although defendant did not present an alibi defense, his identity as the driver of the stolen truck was his sole defense at trial. *See People v. Janes*, 942 P.2d 1331, 1335 (Colo. App. 1997) (identity always material unless stipulated by the defendant). Fabrication of an alibi for his whereabouts when the truck was stolen would have made his identity as the driver less probable. See CRE 401. Hence, the absence of an alibi defense at trial does not preclude the inference that, when defendant discussed contriving such a defense, he perceived a need to show that he was not the perpetrator.
>
> Ambiguities alleged by defendant in the phone conversation do not affect admissibility, but instead go to the weight of the evidence. *See Cox v. People*, 735 P.2d 153, 159 n.10 (Colo. 1987) ("evidence of conduct indicating a consciousness of guilt that is also susceptible to an innocuous interpretation is admissible as relevant, and the weight of the evidence is for the jury to determine").
>
> Nor was the phone conversation unfairly prejudicial under CRE 403. *See* CRE 403; *People v. Orozco*, 210 P.3d 472, 478 (Colo. App. 2009) (challenged evidence must be given its maximum probative value and its minimum unfair prejudicial effect). Such prejudice occurs only if otherwise admissible evidence has "an undue tendency to suggest a decision [made] on an improper basis," which is "commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror." *People v. District Court*, 785 P.2d 141, 147 (Colo. 1990). Unfair prejudice does not result solely because, as here, the evidence damages the defendant's case based on a logical and reasonable inference. Id.

(*Id.* at 5-6).

**3. AEDPA analysis**

The Colorado Court of Appeals determined that, under Colorado law, Mr. Esquibel's post-crime statements which suggested the possible manufacturing of an alibi were relevant to show consciousness of guilt and not unfairly prejudicial. The state appellate court's conclusion that the evidence was relevant comports with Tenth Circuit law. *See, e.g., United States v. Davis*, 437 F.3d 989, 996 (10th Cir. 2006) ("Although false exculpatory statements 'cannot be considered by the jury as direct evidence of guilt,' such statements "are admissible to prove circumstantially consciousness of guilt or unlawful intent.") (quoting *United States v. Zang*, 703 F.2d 1186, 1191 (10th Cir.1982) (other citations omitted).

In determining whether the admission of the evidence nonetheless rendered Mr. Esquibel's trial fundamentally unfair, the Court considers the other evidence of guilt presented at trial, which consisted of the following:

- At approximately 1:30 a.m., on November 20, 2009, two men were at a gas station when they saw a truck drive through a chain-link fence at a property across the street and then continue down the street dragging a large section of the fence.

- When the truck stopped, the witnesses saw a man run away from the vehicle, heading westbound, who weighed approximately 170 lbs, was not "too tall," and was wearing a brown jacket. One of the witnesses called 911.

- The police officer who responded to the dispatch call stopped Mr. Esquibel walking westbound toward Federal Boulevard a few minutes later, approximately 1/8 of a mile from the location of the truck. There were no other pedestrians in the area.

17

- Mr. Esquibel was wearing a dark jacket that appeared to be brown. The officer found what appeared to be a truck key laying on top of the snow approximately 5-6 feet away from Mr. Esquibel. The key was given to another officer who went over to the truck involved in the incident and used the key to unlock the door and start the ignition.

- The truck had the logo "Arborscape" on it, which is the company where Mr. Esquibel had been employed approximately three weeks earlier. Mr. Esquibel had access to vehicle keys when he was employed by Arborscape. There were approximately four sets of keys for each company truck and the company's procedure for securing keys was not strictly enforced. Mr. Esquibel did not have permission to drive the truck at the time it was removed from the premises leased by Arborscape.

(*See generally* 7/19/10 and 7/20/10 Trial Tr.).

The state court record reflects that there was significant circumstantial evidence of Mr. Esquibel's guilt presented at trial without the additional evidence of his ambiguous post-crime statements in the recorded jailhouse telephone conversation. Because the post-crime statements were relevant and not unduly prejudicial in light of the other evidence of guilt, the admission of those statements did not render Mr. Esquibel's trial fundamentally unfair. Therefore, Court finds and concludes that the Colorado Court of Appeals' decision was not contrary to, or an unreasonable application of Supreme Court law.

Mr. Esquibel is not entitled to federal habeas relief for claim 4(c).

## IV. ORDERS

For the reasons discussed above, it is

ORDERED that second amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 8), filed, *pro se*, by Mark A. Esquibel, is DENIED and this action is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that no certificate of appealability shall issue because Mr. Esquibel has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483-85 (2000). It is

FURTHER ORDERED that leave to proceed *in forma pauperis* is denied for the purpose of appeal. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Mr. Esquibel files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED December 9, 2019.

BY THE COURT:

R. BROOKE JACKSON
United States District Judge